# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

**MEMORANDUM OF LAW & ORDER**
Criminal File No. 16-340 (MJD/BRT)

(1) HUY NGOC NGUYEN,

        Defendant.

Chelsea A. Walcker, Assistant United States Attorney, Counsel for Plaintiff.

Brandon Sample, Brandon Sample PLC, Counsel for Defendant.

## I.     INTRODUCTION

This matter is before the Court on Defendant Huy Ngoc Nguyen's

Amended Motion to Vacate under 28 U.S.C. § 2255 [Docket No. 528] and Pro Se

Motion for Evidentiary Hearing [Docket No. 571].

## II.     BACKGROUND

On December 20, 2016, Defendant Huy Ngoc Nguyen was indicted for

Count 1: Conspiracy to Commit Health Care Fraud from 2012 through 2015; and

Count 2: Conspiracy to Commit Mail Fraud from 2012 through 2015.  [Docket

No. 1]  Generally, the Government alleged that Defendant, a chiropractor, participated in a scheme to defraud automobile insurance companies by submitting claims for illegitimate chiropractic services for patients obtained through illegal kickback payments to patient recruiters known as runners.  Also charged in the Indictment were two alleged runners, Jerome Tarlve Doe and Napoleon Tutex Deah.  Defendant had previously retained defense attorney Daniel Scott to represent him in December 2015 when his chiropractic clinic had been raided by law enforcement and had paid $25,000 for that representation. (Def. App'x Ex. U, R.AA, Nguyen Decl. ¶ 2.)  Defendant was one of several chiropractors and their co-conspirators who were charged with similar fraud allegations arising out of a law enforcement investigation dubbed "Operation Backcracker."  These related cases were assigned to the undersigned Judge.  See, e.g., United States v. Adam John Burke, et al., Criminal File No. 16-338 (MJD/BRT); United States v. Preston Ellard Forthun, et al., Criminal File No. 16-339 (MJD/BRT); United States v. Angela April Schulz, et al., Criminal File No. 16-341 (MJD/BRT).

After the Indictment, Defendant retained Scott as his defense attorney in the federal case, and Scott entered his appearance in the case on January 5, 2017.

[Docket No. 28] Scott was a partner at the law firm of Kelley, Wolter & Scott, P.A. (Id.; [Docket No. 471-1] Scott Aff. ¶¶ 1-2.) In the November 23, 2016, engagement agreement, Scott informed Defendant that his defense "could easily cost more than $400,000." ([Docket No. 531] Def. App'x, Ex. F at R.50.) Defendant paid Scott an initial retainer of $100,000. (Id.; Nguyen Decl. ¶ 4.)

A Superseding Indictment was returned against Defendant on August 15, 2017, alleging Count 1: Conspiracy to Commit Mail Fraud and Wire Fraud from 2010 through 2016; Counts 2-7: Mail Fraud from 2013 through 2015; and Counts 8-12: Wire Fraud from 2012 through 2016. [Docket No. 96] Additionally, the Superseding Indictment added new co-Defendants Okwuchukwu Emmanuel Jidoefor, Quincy Chettupally, and Defendant's wife, Mimi Huu Doan.

According to Defendant, over the next several months he began to question whether Scott was investigating his case or actively preparing for trial. (Nguyen Decl. ¶ 5.)

On October 16, 2017, after a jury trial, a jury found chiropractor Forthun guilty on all counts.

On October 17, 2017, the Government filed a Correct Superseding Indictment correcting the spelling of a co-Defendant's name and alleging the same Counts.  [Docket No. 187]

On November 28, 2017, the Court issued an Amended Date Certain Trial Notice setting a March 19, 2018 jury trial date for Defendant and his co-Defendants.  [Docket No. 216]

On December 27, 2017, after a jury trial, a jury found chiropractor Burke guilty on all counts.

In January 2018, Scott was aware that Doan was negotiating a guilty plea. (See Scott Aff. ¶ 12; R.67.)  On January 23, 2018, Doe's attorney informed Scott that Doe might have a plea deal and would testify against Defendant.  (R.60.)  On February 5, 2018, Scott was informed that Chettupally would plead guilty. (R.63.)

Defendant avers that, in late January 2018, Scott recommended to Defendant for the first time that he should plead guilty.  (Nguyen Decl. ¶ 6.) This advice made Defendant "very angry with Scott" because Defendant had been clear that he "wanted a trial and was innocent."  (Id.)

On February 6, 2018, Scott and the attorney for co-Defendant Deah filed a joint motion to continue the trial until May 7, 2018, based on the complexity of the case and the need to reconsider defenses after the two recent guilty verdicts in similar chiropractor trials. [Docket No. 225] (Scott Aff. ¶ 17.)

On February 7, 2018, Scott and Defendant met, and Scott gave Defendant a cost estimate of $457,500 if he wanted to proceed to trial and through sentencing if a guilty verdict were returned, which included $89,500 that had been incurred through November 30, 2018 and not yet paid. (Nguyen Decl. ¶¶ 7-8; R.76.) Defendant claims that he was upset by the $457,500 estimate, thought the amount was "excessive and unjustified," did not have that amount of money to pay Scott, and told Scott this. (Nguyen Decl. ¶ 9.) After the meeting with Scott, Defendant decided he wanted to hire a different attorney. (Id. ¶ 10.) First, he spoke with defense attorney Joseph Friedberg. (Id. ¶ 11.) On February 8, Scott had a telephone conversation with Friedberg regarding the possibility of taking over the case. (R.63.) However, Friedberg declined to take Defendant's case. (Nguyen Decl. ¶ 11.)

Defendant later contacted defense attorney Gary Wolf. (Nguyen Decl. ¶ 12.) From February 8 to February 15, 2018, Defendant had discussions with Wolf

about taking over as defense counsel for trial.  (R.8-43.)  On February 13,

Defendant told Wolf that he had obtained a cashier's check to retain Wolf and

told Wolf "I never want to plead[.]  I want to fight that was why i chose you over

dan scott and joe friedberg."  (R.26-27.)  Scott told the Government that

Defendant intended to proceed to trial and relayed to Defendant that the

Government stated he would "probably face 168 month or over 200 months" if

he were found guilty at trial.  (R.29.)

On February 13, 2018, the Court denied the motion for a continuance,

noting that "[t]he parties have had ample time to prepare for trial;" "Defendants

have not presented a compelling reason for further continuing this trial;" and

"based on the Court's schedule and the parties' schedules, there is not a feasible

date the case can be rescheduled for trial in the near future."  [Docket No. 234]

Scott informed Defendant that the motion to continue had been denied.  (R.29.)

Wolf told Defendant that he could not be prepared to represent him at trial by

March 19, 2018 and warned that if he "took over the case Judge Davis might not

give us more time."  (R.30.)  After further exchanges, Wolf stated: "I cannot take

your case if the trial date is really March 18th.  Judge may not give me more time

due to the age of the case."  (R.36.)  Wolf suggested to Defendant: "You could

write a letter to the judge listing the issues you have with Dan and asking for three months to hire new counsel." (R.38.) Defendant asked "How" to do that, and Wolf texted the Chambers email address to Defendant. (Id.) Defendant asked how to address the Judge, and Wolf informed Defendant how to address the Court. (Id.) Defendant and Wolf continued to correspond about whether Wolf would represent him for a plea and sentencing. (R.38-43.) Defendant wrote that he was "still think[ing] about whether or not to fight this case or accept [the] plea [offer]." (Id.) On February 14, Wolf offered to represent Defendant at sentencing after the plea and Defendant responded: "Since u said u did not want my case so told Dan I plead guilty and have him continued to represent me. Thank you Sir." (R.43.)

On March 6, 2018, Defendant pled guilty to Count 11 of the Corrected Superseding Indictment, Wire Fraud in violation of 18 U.S.C. §§ 2, 1343. [Docket Nos. 253, 254] In exchange, the Government agreed to dismiss all other charges against him. [Docket Nos. 254] During the plea colloquy and under oath, Defendant testified that he had had the opportunity to read the Plea Agreement and Sentencing Stipulations; that he had gone over them with Scott; that Scott had answered any and all questions Defendant had about the Plea Agreement;

that Defendant was satisfied with Scott's answers to his questions and that he understood Scott's answers; that he understood and agreed with everything that was in the Plea Agreement; that no threats or promises had been made to him to get him to enter a plea of guilty, other than what was in the Plea Agreement; that he had enough time to discuss the case with Scott, go over the evidence the Government had against him, and discuss with Scott whether or not he should go to trial or enter into the plea; that Defendant was satisfied with Scott's representation; that he had no questions of the Court, Scott, or the prosecutor about his constitutional rights; and that he knowingly, voluntarily, and intelligently gave up his constitutional rights in order to plead guilty to Count 11. ([Docket No. 271] Plea Tr. 16-17, 22-24.)  Defendant then admitted the facts supporting his guilt on Count 11.  (Id. 25-33.)

On May 22, 2018, Defendant filed a substitution of counsel notice substituting Wolf for Scott.  [Docket Nos. 277-78]

On October 11, 2018, the Court sentenced Defendant to a term of imprisonment of 70 months, to be followed by a term of 2 years supervised release.  Restitution was imposed in the amount of $2,107,854.98.  [Docket No. 347]

Defendant appealed his conviction to the Eighth Circuit Court of Appeals, and that appeal was dismissed on the Government's motion. [Docket No. 378]

Defendant avers that, during the pendency of his appeal, he learned that Scott's law partner, Steven Wolter, was married to Leatha Wolter. (Nguyen Decl. ¶ 13.) Leatha Wolter was a civil attorney who represented State Farm in certain arbitration proceedings against Nguyen. In May 2015, State Farm filed a civil lawsuit against Defendant, alleging, among other things, that Defendant participated in a fraudulent scheme to recruit car accident victims as patients, render unnecessary or patterned treatment to them, or bill for treatments not provided. (Id. ¶ 15; R.1-3 Linsk Decl. ¶¶ 4-13.) There is no allegation that Leatha Wolter was involved in the May 2015 lawsuit. Scott never told Nguyen that Steven Wolter was married to Leatha Wolter. (Nguyen Decl. ¶ 14.) Nguyen avers that, if had known that Steven Wolter was married to Leatha Wolter, Nguyen would not have hired Scott to represent him and would have terminated Scott's representation of him whenever he found out. (Id. ¶ 15.)

On January 20, 2020, Defendant filed a Motion to Vacate under 28 U.S.C. § 2255. [Docket No. 447] On April 28, 2020, the Court granted the Government's Motion to Confirm Waiver of Attorney-Client Privilege and held that, for the

purposes of this habeas proceeding, Defendant has waived attorney-client privilege with regard to all communications, documents, and information reasonably necessary to respond to Defendant's specific allegations of ineffective assistance of counsel.  [Docket No. 470]

On November 10, 2020, Defendant filed an Amended Motion to Vacate under 28 U.S.C. § 2255.   [Docket No. 528]  He bases his motion on three grounds: 1) his guilty plea was not knowing and voluntary because counsel's ineffectiveness impaired his ability to make a knowing and voluntary decision about whether to fire his retained counsel; 2) his guilty plea was not knowing and voluntary because his counsel labored under a financial conflict of interest; and 3) his counsel was ineffective for failing to move for a continuance of the trial date so that Defendant could hire other counsel and for failing to tell Defendant that his counsel needed Defendant's permission to disclose Defendant's desire for new counsel to the Court.  Defendant requests an evidentiary hearing.

## III.   DISCUSSION

### A.     Standard under 28 U.S.C. § 2255

28 U.S.C. § 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of

the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted).

Alternatively, the procedural default can be excused if the defendant can demonstrate that he is actually innocent. Bousley v. United States, 523 U.S. 614, 622 (1998).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

[A] petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.

Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).  In this case, the Court concludes that no evidentiary hearing is warranted because the record in the case conclusively shows that Defendant is not entitled to relief.

### A.  Ineffective Assistance of Counsel Standard

In order to gain relief for ineffective assistance of counsel, Defendant must establish both that his counsel's performance "fell below an objective standard of reasonableness," and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  The burden is on Defendant to establish a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different."  Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."  Thai v. Mapes, 412 F.3d 970, 978 (8th Cir. 2005) (quoting Strickland, 466 U.S. at 687).  The Court "need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice." United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).

Counsel's performance is deficient if it falls outside of the "wide range of reasonable professional assistance," although there is a strong presumption that

counsel's conduct falls within this broad spectrum. Strickland, 466 U.S. at 689.

"Judicial scrutiny of counsel's performance must be highly deferential. It is all

too tempting for a defendant to second-guess counsel's assistance after

conviction or adverse sentence, and it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular

act or omission of counsel was unreasonable." Id. "Counsel's performance is

deficient when it is less competent than the assistance that should be provided by

a reasonable attorney under the same circumstances." Chambers v. Armontrout,

907 F.2d 825, 828 (8th Cir. 1990) (citing Strickland, 466 U.S. at 687).

> The two part Strickland test applies to challenges to guilty pleas
> based on ineffective assistance of counsel. [The defendant] has the
> burden to prove both that his counsel's representation fell below an
> objective standard of reasonableness, and that there is a reasonable
> probability that, but for counsel's errors, he would not have [pled]
> guilty and would have insisted on going to trial.

Tinajero-Ortiz v. United States, 635 F.3d 1100, 1103 (8th Cir. 2011) (citations

omitted).

> "Courts should not upset a plea solely because of post hoc assertions
> from a defendant about how he would have pleaded but for his
> attorney's deficiencies." Instead, "[j]udges should . . . look to
> contemporaneous evidence to substantiate a defendant's expressed
> preferences."

Meza-Lopez v. United States, 929 F.3d 1041, 1045 (8th Cir. 2019) (quoting Lee v.

United States, 137 S. Ct. 1958, 1967 (2017)).

## B.    Conflict of Interest

"In order to establish a violation of the Sixth Amendment, a defendant

who raised no objection [to the district court] must demonstrate that an actual

conflict of interest adversely affected his lawyer's performance." Cuyler v.

Sullivan, 446 U.S. 335, 348 (1980).

> The Eighth Circuit has not applied the Cuyler standard to attorney
> conflicts other than a lawyer's representation of multiple defendants
> [].  Indeed, the Eighth Circuit has noted in dicta that the Cuyler
> standard should be limited to instances of multiple representation.
> See Caban v. United States, 281 F.3d 778, 782 (8th Cir. 2002) ("We
> believe there is much to be said in favor of holding that Cuyler's
> rationale . . . does not apply outside the context of a conflict between
> codefendants or serial defendants."); see also Mickens v. Taylor, 535
> U.S. 162, 174-75 (2002)("[T]he language of [Cuyler] itself does not
> clearly establish, or indeed even support, such expansive application
> [of Cuyler to other types of attorney conflicts.]").

United States v. Carlson, No. CR 12-305(1) (DSD), 2019 WL 5846800, at *2 (D.

Minn. Nov. 7, 2019).

Under Cuyler, if Defendant shows that Scott labored under an actual

conflict of interest, in order to show that Scott's conflict of interest adversely

affected his performance, Defendant must (1) "identify a plausible alternative

defensive strategy or tactic that . . . defense counsel might have pursued;" (2)

14

"show that the alternative strategy was objectively reasonable under the facts of the case;" and (3) "establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict." <u>Covey v. United States</u>, 377 F.3d 903, 908 (8th Cir. 2004) (quoting <u>Mickens v. Taylor</u>, 240 F.3d 348, 361 (4th Cir. 2001) (en banc), <u>aff'd</u>, 535 U.S. 162 (2002)).

The Court need not decide whether <u>Cuyler</u> or <u>Strickland</u> applies to Defendant's conflict of interest claims in this case, neither of which involve multiple or successive representation, because the outcome is the same under either standard.

### C.     Validity of Defendant's Guilty Plea

"The general rule is that a valid guilty plea waives all non-jurisdictional defects.  Stated differently, a valid guilty plea forecloses an attack on a conviction unless on the face of the record the court had no power to enter the conviction or impose the sentence." <u>Walker v. United States</u>, 115 F.3d 603, 604 (8th Cir. 1997) (citation omitted).  "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." <u>Id.</u> (quoting <u>United States v. Morrison</u>, 967 F.2d 264, 268 (8th Cir. 1992)).

"[I]n collaterally attacking a plea of guilty a prisoner 'may not ordinarily repudiate' statements made to the sentencing judge when the plea was entered . . . ." Pennington v. Housewright, 666 F.2d 329, 331 (8th Cir. 1981) (quoting Blackledge v. Allison, 431 U.S. 63, 73 (1977)).

> [O]nce a person has entered a guilty plea any subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. Additionally, a district court is not required to conduct an evidentiary hearing on allegations which amount[ ] to no more than a bare contradiction of statements petitioner made when she [or he] pled guilty.

Tran v. Lockhart, 849 F.2d 1064, 1068 (8th Cir. 1988) (citations omitted).

> While a guilty plea taken in open court is not invulnerable to collateral attack in a post conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings.

Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (citation omitted).

### D. Ground One: Whether Counsel Prevented Defendant from Making a Knowing and Voluntary Decision about Whether to Fire Him

Defendant asserts two related alleged errors in ground one. First, he asserts that Scott was ineffective because he failed to disclose the relationship between Leatha Wolter and Steven Wolter and this failure caused prejudice because it affected Defendant's right to choose the counsel of his choice. Second,

16

Defendant asserts that Scott denied him his right to counsel of his choice by failing to disclose that he was conflicted based on the relationship between Leatha Wolter and Steven Wolter, because, if Defendant had known of the conflict, he would have terminated Scott's representation.

### 1.    Right to Counsel of Choice

The Sixth Amendment guarantees a defendant's right "to select and be represented by one's preferred attorney," so long as that attorney is "an otherwise qualified attorney whom that defendant can afford to hire." Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 624 (1989) (citation omitted); Luis v. United States, 136 S. Ct. 1083, 1089 (2016) (citation omitted). "If a defendant is erroneously denied the counsel of his choice, it is a structural error in the trial that brings into question the voluntary and intelligent character of the guilty plea itself." United States v. Sanchez Guerrero, 546 F.3d 328, 332 (5th Cir. 2008). Thus, "even in cases where a defendant has pled guilty, [the appellate court] must consider whether the district court erroneously denied a defendant the right to his counsel of choice, and waiver will not apply." Id.

A defendant's right to counsel of choice is implicated when the Court interferes with the defendant's attempt to hire or fire particular counsel, for

example by denying a defendant's motion to continue in order to substitute new counsel.  See, e.g., United States v. Jones, 662 F.3d 1018, 1024 (8th Cir. 2011). Defendant points to no case indicating that defense counsel can violate their client's right to counsel of choice.  Cf., e.g., Sanchez Guerrero, 546 F.3d at 332 (noting that "even in cases where a defendant has pled guilty, we must consider whether **the district court erroneously denied** a defendant the right to his counsel of choice") (emphasis added).

In essence, Defendant claims that Scott was ineffective, based on an undisclosed conflict of interest, and attempts to repackage that ineffective assistance of counsel claim as a denial of counsel of choice claim.  Under Defendant's theory, any time retained defense counsel's performance fell below an objective standard of reasonableness or was tainted by a conflict of interest, the defendant was deprived of his counsel of choice because, if the defendant had known of counsel's conflict or unreasonable conduct, counsel would have been terminated; thus, no prejudice or adverse effect on counsel's performance need be shown.  In other words, under Defendant's theory, neither Strickland nor Cuyler would apply to retained counsel.  The Court rejects this tortuous logic.

Here, neither the Court nor the Government took any action to interfere Defendant's right to his counsel of choice. Defendant hired the defense attorney that he wished to hire, Scott, and was represented by Scott until Defendant decided to terminate Scott and hire Wolf, which Defendant did without interference by the Court or Government. The record further reflects that Defendant had the financial resources to retain counsel – first retaining Scott and then retaining Wolf. (See also [Docket No. 301] Presentence Report ("PSI") ¶ 90 (reflecting Defendant's net worth of $1.4 million); [Docket No. 529] Def. Memo. at 15 (noting that Defendant had obtained a cashier's check to retain Wolf by February 13, 2018); R.26 (same).) The Court concludes that Defendant fails to allege a claim for interference with the right to counsel of his choice.

### 2. Ineffective Assistance of Counsel

Defendant asserts that Scott provided ineffective representation by preventing Defendant from knowingly and intelligently exercising his right to counsel of choice because Scott failed to disclose a conflict of interest based on his law partner's wife's employment and, had Defendant known of this alleged conflict, Defendant would not have hired Scott or would have terminated Scott's representation. Specifically, Defendant asserts that Scott should have told

Defendant that Steven Wolter, a partner is Scott's law firm, was married to

Leatha Wolter, and that Leatha Wolter represented State Farm, one of the

insurance companies Defendant was accused of defrauding, in past civil

arbitrations against Nguyen.  There is no allegation that Leatha Wolter was

involved in State Farm's 2015 civil litigation against Defendant or in the

Government's criminal proceeding against him.  Defendant asserts that there

was a significant risk that Scott's representation of him was materially limited by

Scott's responsibilities to his law firm or Scott's interest in maintaining a good

relationship with Steven Wolter.

 The Court concludes that Defendant fails to state a claim for ineffective

assistance of counsel based on the failure to reveal the alleged conflict involving

Leatha Wolter.  First, Defendant fails to point to evidence that Scott's conduct fell

below an objective standard of reasonableness.  Second, Defendant fails to point

to evidence of prejudice or that the alleged conflict adversely affected his

lawyer's performance.

 Defendant bases the claim of conflict on Minnesota Rule of Professional

Responsibility 1.7, adopted by this Court under Local Rule 83.6.  Rule 1.7

provides that, subject to certain exceptions, "a lawyer shall not represent a client

if the representation involves a concurrent conflict of interest."  Defendant notes

that the commentary to Rule 1.7 provides:

> When lawyers representing different clients in the same matter or in
> substantially related matters are closely related by blood or
> marriage, there may be a significant risk that client confidences will
> be revealed and that the lawyer's family relationship will interfere
> with both loyalty and independent professional judgment.  As a
> result, each client is entitled to know of the existence and
> implications of the relationship between the lawyers before the
> lawyer agrees to undertake the representation.

However, the same paragraph further notes: "The disqualification arising from a

close family relationship is personal and ordinarily is **not imputed to members**

**of firms with whom the lawyers are associated**." (emphasis added).  Therefore,

the Rule itself provides that the type of conflict alleged by Defendant would

extend to Steven Wolter, but not to Scott.  Defendant cites to no caselaw or rule

that indicates that Scott's conduct was below the objective standard of

reasonableness.  The Court cannot find that defense counsel's conduct in failing

to reveal Leatha Wolter's representation of State Farm fell below an objective

standard of reasonableness when the very rule Defendant relies on the show an

alleged conflict provides that the conflict is not imputed to other members of the

law firm.

Second, even if a reasonable attorney would have revealed that his law partner's wife represented one of Defendant's alleged victims in matters not related to the current federal indictment, Defendant has not even attempted to show prejudice. He offers no argument or evidence to show a reasonable probability that, but for unprofessional errors by counsel, the result would have been different. Nor does Defendant attempt to show that the alleged conflict adversely affected his lawyer's performance. Instead, Defendant relies on his previously rejected argument that defense counsel can deny a defendant of his counsel of choice thereby causing a structural error. As the Court has explained, this argument carries no weight.

### E.    Ground Two: Whether Counsel Had a Financial Conflict

In his second ground, Defendant asserts that Scott was laboring under an actual, financial conflict of interest when he advised Defendant to plead guilty rather than proceed to trial. Defendant argues that Scott knew that Defendant was unlikely to pay Scott any more money, so convincing Defendant to plead guilty was the only way for Scott to avoid non-payment of his legal fees if Scott remained as Defendant's counsel. Defendant asserts that Scott never told him that Scott could not unilaterally withdraw from representing him or that Scott

would continue to vigorously represent him at trial even if Defendant did not

pay him any more money.  (Nguyen Decl. ¶¶ 18-20.)

### 1.    Whether Counsel Had a Financial Conflict of Interest

"Although a 'defendant's failure to pay fees may cause some divisiveness

between attorney and client,' courts generally presume that counsel will

subordinate his or her pecuniary interests and honor his or her professional

responsibility to a client."  Cooke v. United States, No. 4:13CV01702 ERW, 2014

WL 2118076, at *7 (E.D. Mo. May 21, 2014) (quoting United States v. Taylor, 139

F.3d 924, 932 (D.C. Cir. 1998) (quoting United States v. O'Neil, 118 F.3d 65, 71 (2d

Cir. 1997))).

Defendant relies on Daniels v. United States, 54 F.3d 290, 294-295 (7th Cir.

1995) ("A conflict may [] arise when a client's interests are adverse to his lawyer's

pecuniary interests.") (citations omitted).  In Daniels, the Seventh Circuit held

that an evidentiary hearing was required when the defendant made the

following accusations regarding ineffective assistance of counsel based a

financial conflict of interest:

> [The defendant] maintains that he is innocent of any involvement in
> the cocaine conspiracy and that he accepted the revised guilty plea . .
> . on the advice of an attorney who was improperly motivated.  . . .
> [The defendant] attests that he was only able to pay Reilley, a

retained attorney, $2,000 of his $10,000 fee. Reilley allegedly advised him to accept the revised plea, despite his protestations of innocence on the cocaine charges, because Reilley could not take the case to trial without the remaining $8,000. [The defendant] claims that he requested (and the court granted) a continuance of the sentencing hearing for two weeks so that he could attempt to raise the money to go to trial. [The defendant] claims that he was unable to raise the money and thus accepted the plea.

Daniels v. United States, 54 F.3d 290, 293 (7th Cir. 1995) (footnote omitted). The Seventh Circuit concluded that, based on the "limited record [it could not] conclude whether Reilley improperly pressured [the defendant] to accept the revised plea rather than go to trial because [the defendant] had not been able to accumulate the balance of his fee." Id. at 295. Therefore, the matter was remanded for an evidentiary hearing. Id. But see United States v. Taylor, 139 F.3d 924, 932 (D.C. Cir. 1998) (rejecting defendant's habeas claim, without evidentiary hearing, that defense counsel advised him to plead guilty based on fee dispute based on the record of the case and "because many defendants undoubtedly face similar financial demands from their counsel") (footnote and citation omitted).

Defendant argues that, here, Scott estimated that it would cost $457,500 to represent him through trial and sentencing. Scott provided his fee estimate to Defendant in February 2018, and, as of January 31, 2018, Defendant owed Scott

$89,512.50 for legal fees already incurred.  (R.75.)  As of February 8, 2018, Scott

estimated invoices for December 2017 and January 2018, which had not yet been

billed, to be $86,030.  (R.76.)  Therefore, in February 2018, when Scott was giving

Defendant advice on taking a plea, Defendant owed Scott $147,500.  Defendant

concludes that Scott did not want to risk representing Defendant at trial and not

getting paid by Defendant, so Scott used his fee estimate as a means to coerce

Defendant into pleading guilty.

The weight of authority holds that a client's failure to pay fees does not

establish a conflict of interest.  See, e.g., United States v. O'Neil, 118 F.3d 65, 71

(2d Cir. 1997) (gathering cases).  Regardless, even under Daniels, Defendant

cannot show an actual conflict of interest.  Unlike in Daniels, here, the record

demonstrates that Defendant had sufficient funds to pay Scott's legal fees in

order to proceed to trial.  According to the Presentence Investigation Report,

Defendant's net worth in May 2018 was $1.4 million, which included $350,000 in

his personal checking account.  ([Docket No. 301] PSI ¶ 90[1].)  In April 2018, after

Defendant pled guilty, he set aside additional $1 million into an irrevocable trust

---

[1] Defendant accepted these facts in the PSI (see [Docket No. 355] Sentencing Tr. 1-
5) and does not dispute them now.

for his children.  (Id. ¶ 91.)  The record further reflects that Defendant privately

retained three different new attorneys to handle his sentencing, his appeal, and

his post-conviction relief.

### 2.    Adverse Effect on Performance or Prejudice

Even if Scott had labored under an actual conflict of interest, Defendant

cannot show that such a conflict adversely affected the adequacy of his

representation or that the conflict adversely affected the voluntary nature of his

guilty plea.  See Berry v. United States, 293 F.3d 501, 503 (8th Cir. 2002).

The record shows that Scott recommended that Defendant accept the plea

agreement offered by the Government because he thought it was the best

possible resolution to avoid a potential sentence of 168 to 210 months in light of

the strength of the Government's case against him.  (Scott Aff. ¶¶ 13-19, 23.)  The

Plea Agreement recommended a sentencing range of 63 to 78 months.  ([Docket

No. 254] Plea Agreement ¶ 6.f.)  After pleading guilty, Defendant was sentenced

to 70 months in prison.  [Docket No. 347]  The record shows that it would be

unreasonable to conclude that Scott's alleged conflict adversely affected his

representation of Defendant during the time Defendant was deciding whether to

plead guilty.  In light of the plea negotiations by Defendant's wife and business

partner, the decision to plead guilty and testify against Defendant by one of

Defendant's runners, and the recent guilty verdicts against the first two

chiropractors to go to trial, Burke and Forthun, the record shows that any alleged

conflict made no difference in the quality of Scott's performance as Defendant's

attorney during this phase.  See Berry, 293 F.3d at 503–04.

The record also conclusively establishes that any alleged conflict did not

adversely affect the voluntariness of Defendant's plea.  See Berry, 293 F.3d at 504.

The plea colloquy demonstrates that Defendant was fully informed of his rights,

had gone over the Government's evidence against him, was satisfied with Scott's

representation, was subject to no threats or promises to induce him to plead

guilty, and was, in fact, guilty of the crime charged and admitted the specific

facts establishing his guilt.  Moreover, Defendant knew that he had the ability to

hire a different attorney, had the financial means to do so, and conferred with

multiple other experienced federal defense attorneys before deciding to go

forward with Scott at the plea hearing.

> **F.** **Ground Three: Whether Counsel Was Ineffective for Failing to Request a Continuance of the Trial Date and Failing to Inform Defendant that Counsel Needed Defendant's Permission to Disclose Defendant's Desire for New Counsel to the Court**

In his third ground, Defendant asserts that Scott was ineffective for failing to move for a continuance of the trial date so that Defendant could hire replacement counsel and for failing to advise Defendant that Scott needed Defendant's permission to inform the Court that Defendant wanted new counsel. Although Scott did make a motion for a trial continuance that was denied, Defendant asserts that if Scott had told the Court that a continuance of the trial date was needed so that Defendant could hire Wolf, there is a reasonable probability that the Court would have granted the motion for a continuance and Defendant could have hired Wolf to represent him at a trial. Thus, Scott deprived Defendant of his counsel of choice.

### 1.    Whether Counsel Was Ineffective

The Court concludes that the record conclusively shows that Defendant cannot show that Scott's conduct was unreasonable for failing to inform the Court that Defendant wanted to hire a new attorney and desired a trial continuance to do so. Nowhere does Defendant claim that he informed Scott that he wanted a trial continuance in order to hire another attorney such as Wolf. "Counsel cannot be found incompetent because he failed to read his client's mind." Almond v. United States, 854 F. Supp. 439, 447 (W.D. Va. 1994).

The sole evidence that Defendant points to that Scott was on notice of his desire to hire another attorney is a February 8, 2018 time record in which Scott wrote "phone conversation with Friedberg re taking over case." (R.63.) However, Defendant avers that Friedberg declined to take his case. (Nguyen Decl. ¶ 11.) In his second declaration, Defendant vaguely claims that "Scott was aware that I wanted to hire another attorney," (Second Nguyen Decl. 5), but he never claims that he informed Scott that he had made a decision to fire Scott and actually retain a different attorney, such as Wolf, or that he told Scott that he wanted a trial continuance to do so. The fact that, in the midst of deciding whether to plead guilty or proceed to trial, Defendant contacted other defense attorneys for a second opinion did not put Scott on notice that Defendant had, in fact, decided to fire him and hire a new attorney and that this new attorney required a trial continuance as a prerequisite to taking Defendant's case.

## 2. Prejudice

For the reasons explained in Section III(D)(1), the Court rejects Defendant's claim that he need not show prejudice because Scott deprived him of his right to counsel, creating a structural error. A defense attorney cannot deprive his client of his right to counsel of choice. Moreover, the record shows that Defendant was

aware that he had the ability to hire new counsel and that he had the means to do so, but he chose not to.

Nor can Defendant show prejudice from Scott's alleged failure to inform Defendant that, with Defendant's permission, Scott could inform the Court that Defendant wanted new counsel and request a continuance on that basis. First, Defendant's own evidence shows that Wolf informed him that he could ask the Court for a trial continuance in order to hire Wolf and explained to Defendant how to do so. (R.38.) Yet Defendant made no indication to the Court at any time that he wanted to hire new counsel and, instead, later averred at the plea hearing that he was satisfied with Scott's representation. Nor did Defendant ever tell Scott that he wanted him to request a continuance in order for Defendant to retain new counsel.

## G. Certificate of Appealability

With regard to the Court's procedural rulings, the Court concludes that no "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right;" nor would "jurists of reason . . . find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). With regard to the Court's decision on the merits, it concludes that no "reasonable jurists would find the district court's

30

assessment of the constitutional claims debatable or wrong." <u>Id.</u> Therefore, the

Court denies a Certificate of Appealability in this case.

Accordingly, based upon the files, records, and proceedings herein**, IT IS**

**HEREBY ORDERED**:

1. Defendant Huy Ngoc Nguyen's Amended Motion to Vacate under 28 U.S.C. § 2255 [Docket No. 528] and Pro Se Motion for Evidentiary Hearing [Docket No. 571] are **DENIED**.

2. The Court denies a Certificate of Appealability in this case.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 2, 2021                    s/Michael J. Davis
                                        Michael J. Davis
                                        United States District Court